OLAH *v.* FIRST HUNGARIAN REFORMED, ETC., INSURANCE AND CHURCH SOCIETY.

1. INSURANCE—BENEFICIAL ASSOCIATIONS—TERMINATION OF MEMBERSHIP—ABANDONMENT.
   Finding of trial judge that member of mutual benefit association voluntarily dropped his membership and renounced all claim of benefit under his policy, *held*, justified by undisputed testimony.

2. SAME—OBLIGATION TO PAY CEASED ON TERMINATION OF MEMBERSHIP.
   Where member of mutual benefit association voluntarily terminated his membership, obligation of association to pay death and burial benefits ceased.

3. SAME—HEIRS MAY NOT ENFORCE CLAIM ABANDONED BY DECEASED.
   Where father in his lifetime terminated his membership in mutual benefit association, and abandoned his claim against it for sick benefits, his children would have no right to make

claim therefor after his death, especially where said claim was not inventoried as asset of his estate and assignment of residue of estate would give them no right to enforce it.

4. APPEAL AND ERROR—EVIDENCE—HARMLESS ERROR.
    Error, if any, in admission of testimony in case tried without jury, was not prejudicial, where there was ample competent testimony to support essential findings of judge.

Case-made from Wayne; Hart (Ray), J., presiding. Submitted June 9, 1931. (Docket No. 105, Calendar No. 35,106.) Decided October 5, 1931.

Assumpsit by Irma Olah and another against First Hungarian Reformed John Calvin Men and Women Sick Benefit Accident Insurance and Church Society of Detroit on an insurance policy. Judgment for defendant. Plaintiffs review by case-made. Affirmed.

*Henry Stone,* for plaintiffs.

*Asher L. Cornelius,* for defendants.

NORTH, J. Plaintiffs brought suit to recover insurance from defendant, a voluntary society. On trial in the circuit court without a jury, defendant had judgment. Plaintiffs review by case-made. Plaintiffs are the only children and heirs-at-law of Joseph Olah, who died June 10, 1927. Olah became a member of the defendant society in 1920. He paid his monthly dues and assessments to and including those that accrued in August, 1926. He thus became a member in good standing in the defendant society until the fourth Sunday in September, 1926. On September 21, he met with an accident, and it is stipulated in the record that from that time until his death he was a sick man. The by-laws of the society provide:

"Every honorable man or woman, born in Hungary who is past 16 years of age, or born of Hungarian parentage, who is Reformed, and not more than 50 years of age, who pays regular dues under his own name to the Hungarian Reformed Church of Detroit, and who is regular visitor of the church services, may become a regular member. * * *

"Dues are 75 cents payable at the monthly meetings. Who proves that his church membership dues are paid or that he is excused by church authorities, pays as a regular monthly dues 50 cents only. * * *

"The member shall pay the monthly dues and the death dues regularly. * * *

"Each member who shall not pay the levied $1 death dues inside 60 days shall be stricken from the roll. * * *

"According to this by-law the following shall not receive aid. * * *

"(d) If he or she is in arrears with two months' dues or if he or she should not pay dues during illness. * * *

"A member shall be expelled from the society for the following reasons: * * *

"If he or she is in arrears with four months' dues."

On October 18, 1926, Joseph Olah was adjudicated insane and committed to Eloise. He was released January 1, 1927, and on February 2d, following, was adjudicated sane. After payment of Olah's dues in August, 1926, to the time of his death, June 10, 1927, no dues or assessments were paid the defendant by him or in his behalf; and, so far as disclosed by the record, he made no claim of defendant for payment of the sick benefits provided in his insurance. Plaintiffs have brought suit for $370 death benefit, $80 funeral expenses, and the sick benefits from September, 1926, to June, 1927. Under its plea of general

issue defendant gave notice of the following claimed defenses:

"1. That Joseph Olah was not a member of said society at the time of his death.

"2. That Joseph Olah was in arrears on his dues at the time of his death, and, under the by-laws of the society, was not entitled to sick benefit.

"3. That the accident which the said Joseph Olah suffered was not properly reported to the society.

"4. That after the said Joseph Olah had come from Eloise, he was given the opportunity to pay his dues and receive sick benefit and a reinstatement under the policy of insurance; but said Joseph Olah then and there informed the society that he did not care to be reinstated as he intended to remain in America only a short time."

The record does not disclose that any notice or formal action is required by defendant's by-laws to terminate membership for nonpayment of dues or assessments. On the contrary, the provision above quoted is that a member shall be expelled if he is four months in arrears. The circuit judge found that more than four months elapsed after Olah was adjudicated sane (February 2, 1927) before his death (June 10, 1927); and he held that the right to the death and burial benefits was lost by nonpayment of dues.

Plaintiffs insist that deceased was not in default in his payments because it conclusively appears that he was entitled to payment of sick benefits which amounted to more than his dues and assessments; and it is their claim that as long as the sick benefits remained unpaid the deceased was not in default, because defendant had in its hands money belonging to deceased amounting to more than the dues and assessments which accrued against him. See *Clif-*

*ford* v. *Catholic Mutual Benefit Ass'n,* 208 Mich. 448. But in this connection the circuit judge found that deceased voluntarily dropped his membership in the defendant society and renounced all claim of benefit under his policy; and hence plaintiffs cannot now have accrued sick benefits applied in payment of defaulted dues or assessments, especially since the sick benefits belonged to deceased, and plaintiffs established no right to recover therefor. We think the circuit judge's conclusion was justified by the undisputed testimony of Mary Marek. She testified that in February, 1927, defendant's secretary asked Olah to pay up his back dues and "be a member further in this society," and that Olah replied: "I am not intending to stay in America just as long as I can sell my property; I intend to go to Europe; and he says I didn't ask for any sick benefits because I know I have not a right to it, and I don't want to belong to the society no more."

Olah had paid consistently prior to August, 1926; and his neglect or refusal to pay during the latter months of his life, when he had money in the bank, is thoroughly consistent with the testimony of this witness. Having thus terminated his membership in the society, the obligation to pay the death and burial benefits ceased.

It was also correctly held that plaintiffs did not establish a right to recover the sick benefits which accrued to their father during his last illness. First, the father had the right in his lifetime to renounce and abandon this claim against the defendant, and the testimony seems to establish that he did so. Further, the record does not show that the claim for sick benefits was inventoried as one of the assets of Joseph Olah's estate or in any way made a part thereof. If it was not, the assignment of the residue

to plaintiffs would not vest them with the right to enforce this claim. It may further be noted that the assignment of the residue was not made to plaintiffs until more than eight months after this suit was commenced.

Plaintiffs' assignments of error are in part based upon the admission of testimony equally within the knowledge of the deceased. 3 Comp. Laws 1929, § 14219. The suit was tried without a jury and testimony of this character was taken in the record subject to the objection. The testimony of the witness Mary Marek was not within the prohibition of the statute; and there was ample unobjectionable testimony to sustain the essential findings of the circuit judge. The alleged errors of this character were not prejudicial.

We have considered each of appellants' 20 assignments of error, but in view of the theory upon which the circuit judge decided the case, we find them to be without merit. On both sides of the case there is testimony the credibility of which might well be challenged. The trial judge saw the witnesses and we are satisfied to accept his decision of the material disputed issues of fact. Judgment is affirmed, with costs to appellee.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, SHARPE, and FEAD, JJ., concurred.